Ex Parte Lorenzo Rivera, Petitioner.

No. 92.   Argued December 23, 1925.—Decided April 7, 1926.

*Arjona & Arjona* for the petitioner. *Hon. George C. Butte, Attorney General, C. Llauger Díaz* and *José E. Figueras, Fiscal,* for the People.

Mr. Justice Franco Soto delivered the opinion of the court.

Lorenzo Rivera was enlarged on habeas corpus brought originally in this court. The opinion was rendered and the judgment entered on December 11, 1925, it being held that the lower court acted without jurisdiction in imposing on the defendant a fine of fifty dollars or imprisonment in default of its payment for violating Regulation 1 of the Public Service Commission approved June 30, 1925.

The information charged that the accused had operated a motorbus between fixed points in the city of Ponce for profit, without first having obtained a certificate of necessity and convenience from the Public Service Commission for carrying on that business. The basis of our decision in *Ex Parte Rivera,* 34 P.R.R. 741, was that the only sanction provided by the rules and regulations of the commission is found in section 95 of Act No. 70 of December 6, 1917, defining public service companies, etc., as amended by Act No. 32 of June 20, 1921, its application being of an administrative and not of a penal nature.

It did not seem necessary at that time to make a more extensive study of the law applicable, inasmuch as at the hearing the *Fiscal* acquiesced in the granting of the petition for the reasons stated in our opinion. However, as in the regulations adopted by the commission on June 3, 1924, No. XVI indicates that the penalty applicable is that of section 99 of said Act No. 70, albeit at the end of the regulations section 95 of the Act and not section 99 is copied textually under the title "Penal Sanction," it seemed well in view of that contradiction and of the differences of opinion between the *Fiscal* and the Attorney General, as we shall see later,

that the matter should be more fully discussed; therefore this court made the following order:

"Let the parties be heard on the influence that section 99 of Act No. 70 of 1917 and any other section of the same Act in relation thereto may have in the consideration of the question involved in this case, and a hearing thereon is set for December 23rd, instant, at 2 p.m. Let notice hereof be given to the parties."

At the new hearing the *Fiscal* and the Attorney General sustained different points of view and all of the parties interested filed briefs.

The *Fiscal* contended that our judgment of December 11, 1925, should not be modified because section 99 of Act No. 70, "Defining public service companies," of December 6, 1917, did not "establish any penalty for violation of the rules and regulations, but prescribed a penalty for failure to obey a final order of the commission or of any district court, or, what is the same, it established a penalty for contempt, which in regard to courts is superfluous, since they have inherent power to punish contempt in addition to the special Act that defines and punishes contempt."

Section 99 of the Act reads as follows:

"*Penalty for Violation of Court Orders.*—Any person, whether an officer, agent or employee of any public-service company or not, or any company, who shall knowingly fail, omit, neglect or refuse to obey, observe and comply with any final order, direction or requirement of the commission or with any final order or decree of the said District Court of San Juan, Section 1, or of any other court; or who shall knowingly procure, aid or abet any such violation, omission, failure, neglect or refusal, shall be guilty of a misdemeanor, and upon conviction thereof in any court of record shall be punished by a fine of not more than five hundred (500) dollars, or by imprisonment of not less than one month, nor more than twelve months, or both, at the discretion of the court; and upon conviction of any subsequent offense shall be punished by a fine of not more than one thousand (1,000) dollars or by imprisonment for not less than three months, nor more than eighteen months, or both, at the discretion of the court."

The Act defining public service companies, etc., enacted

by the Legislature in 1917 seems to have been taken from the public service Act of Pennsylvania and its section 99 is the equivalent to section 39 of that Act, which reads as follows:

"Sec. 39.—Any person, whether an officer, agent, or employe of any public service company or not, or any corporation, who shall knowingly fail, omit, neglect, or refuse to obey, observe, and comply with any final order, direction, or requirement of the commission, or with any final order or decree of the said Superior Court or of the Supreme Court; or who shall knowingly procure, aid or abet any such violation, omission, failure, neglect, or refusal,—shall be guilty of a misdemeanor, and upon conviction thereof in any court or quarter session of competent jurisdiction shall be punished by a fine of not more than five hundred dollars, or by imprisonment in the county jail for not less than one month, nor more than twelve months, either or both, at the discretion of the court; and upon conviction of any subsequent offense shall be punished by a fine of not more than one thousand dollars, or by imprisonment in the county jail for not less than three months nor more than eighteen months, either or both, at the discretion of the court."

■■ The question to be decided would be whether section 99 is applicable to simple violations of the rules and regulations of the commission by virtue of the authority which section 48 confers upon it. We do not believe that an affirmative conclusion can be reached even by inference. As any other penal statute, it is subject to strict interpretation and no one can be subjected to a penalty unless there is an express declaration in the Act free from implication or interpretation. Although our Legislature summarized section 99 under the heading of "Penalty for Violation of Court Orders," that is not an equivocal expression of the Legislature, for it clearly may be deduced from the text as a whole that it refers only and exclusively to contempt, as we agree with the *Fiscal* that nothing else is meant by failure to obey final orders of the commission and judgments of the district courts.

The authority of the commission to make orders of a final character is derived from the general administrative power

given to it by the Organic Act and Act No. 70 of 1917 to supervise and regulate all public service companies doing business in Porto Rico. The Act defines the powers and duties of the commission, establishes the practice and procedure before it for the holding of hearings upon its own motion or upon complaint, and lastly it makes orders or final decisions, which must be notified to the parties thereby in the form provided by section 74, which says:

"*Service of Final Orders.*—Every final order of the commission shall be served upon each public-service company affected thereby, in the manner now provided by law for serving a writ of summons upon individuals or corporations; and return of said service shall be made by the person serving said order to the secretary of the commission, in the manner and form now provided by law for making return of the 'service of writ or summons; and a certified copy of said order shall be mailed by registered mail to all other parties to the proceedings in which such order is issued, or their respective attorneys; but the failure of any public-service company or of any party to the proceedings to receive such copy shall not prevent the said order from being conclusive, and taking effect on the date specified therein." Acts 1917 (2) p. 524.

This section corresponds to section 13 of the Pennsylvania Act and by its terms in harmony with the other provisions of the Act a final order may be defined as the result of a question submitted to the consideration of the commission and that should be notified in the manner provided to the parties affected by it as if it were a final judgment of a court. And to this kind of orders is it that section 99 extends in case of disobedience thereof. It is insisted, however, by the Attorney General that section 99 is applicable to violations of the rules and regulations of the commission, and he bases his reasoning principally on section 25 of Act No. 70 and No. XVI of the regulations adopted by the commission on June 30, 1925, alleging that that regulation establishes a penal action against any public carrier refusing to obey any order of the commission or violates the regulation. His argument on that point is as follows:

"Likewise, section 25 says that whenever the commission shall determine that the service of any public service company is unsafe, inadequate, insufficient or unreasonable, the commission shall determine and specify by an order in writing the just, reasonable, safe, adequate, and sufficient service, facilities, rules, regulations or practices to be thereafter put in force by said company, and after the said order shall have been served, it shall be the duty of every public service company affected by said order, to obey and observe it. By virtue of these powers the commission approved a set of rules on June 30, 1925, which repealed the rules previously existing.

"In rule 16 of this regulation a penal action is established against any public carrier who, being subject to the provisions of the rules, should fail to comply with it or should refuse to obey and observe any order of the commission entered by virtue of said rules, and it is further provided that any person, company or corporation violating any of the provisions of the regulations shall be punished as provided in section 95 of the Public Service Act, as amended by Act No. 32 of June 20, 1921. This mistake of the Commission in pointing out section 25 (*sic*) instead of section 99 of the Act in no way alters the power of the Commission to consider any violation of its rules and cause the violator to be tried by a competent district court."

Section 25 referred to reads as follows:

"*Regulation of Services, Facilities, Rules, Regulations and Practices.*—Whenever the commission shall determine, after hearing had upon its own motion, or upon complaint, as hereinafter provided, that the service, facilities, rules and regulations, practices, or classifications of any public-service company, in respect to its public duties are unsafe, inadequate, inefficient, unjust, or unreasonable, the commission shall determine and specify by an order in writing to be made and filed as hereinafter provided the just, reasonable, safe, adequate, and sufficient service, facilities, rules, regulations, or practices thereafter to be put in force, observed, rendered, used, or furnished in the performance of its public duties by said public-service company; and thereupon it shall be the duty of every public-service company affected by said order to observe and obey said order." (1917 [2] p. 484.)

This section of the Act gives the exact idea of what is to be understood by a final order, it being the result of a controversy before the commission, either upon this body's own

motion cr upon a complaint, which is a matter distinct from the rules and regulations which the commission is authorized to adopt by section 48, which reads as follows:

"*Rules and Regulations—Withholding Information.*—The commission may make such rules and regulations not inconsistent with the law as may be necessary and proper in the exercise of its powers for the performance of its duties; and whenever the commission shall determine it to be necessary in the interest of the public, to withhold from the public any facts or information obtained during the progress of any investigation, such facts and information may be so withheld." (1917 [2] p. 510.)

There is nothing in the Act defining public service companies that expressly states that the violation of such rules and regulations constitutes a misdemeanor. If this is the kind of criminal offense to which the Attorney General refers by contending that Rule XVI establishes said penal action for violations of the general rules of the commission, this would amount to saying that the Legislature had delegated to the commission the power to determine the acts or omissions which in relation to public service companies constitute crimes, but that is a power that can not be delegated by the legislatures, nor is there any authority sustaining a similar theory. Where a statute does not provide that the violation of regulations shall amount to a criminal offense the regulations themselves are ineffectual to create such an offense. There must be in all cases statutory authority for declaring that an act amounts to a crime. 6 R.C.L. 182. What the commission does in adopting regulations is to exercise an authority delegated by the Legislature, or to prescribe certain duties over which the law can act to impose a penalty and to realize the object for which the law is enacted. And when the commission put in force the last regulation adopted on June 30, 1925, it prescribed in different rules those duties which not being inconsistent with the Act serve to guide the public service companies in fulfilling their purposes and give practical effect to the Act. However, the

commission could not originally specify the penalty in case its rules were violated, unless there is an express provision in the statute in that regard. This is the extent that No. XVI of the regulations can have. It reads:

"Any public carrier subject to the provisions of these rules who fails to comply or who refuses to obey and observe any order of the commission made in virtue of these rules, or any person, company or corporation who shall wilfully violate any of their provisions, shall be prosecuted according to the provision of section 95 of the Public Service Act, as amended by Act No. 32 of June 20, 1921."

It cites section 95 as the only penalty that the Act establishes for violations of the rules and regulations and although its force, as a penal matter, is not received by it directly from such rules, it is only a fact that shows that it was not a mistake incurred by the commission in preparing its last regulation of June 30, 1925, but rather it seems that the commission wanted to clear up the contradiction that appeared from the previous regulation of June 3, 1924.

It is possible that that part of section 99 that says: . . . "or refuse to obey, observe and comply with any final order, direction or requirement of the commission" . . . might lead to error in the sense that the word "direction" might mean the general rules adopted by the commission.

However, as argued by the *Fiscal,* the translation of "direction" of the English text into *"disposición"* is erroneous. The section in English as taken from the Pennsylvania Act uses the words "refuse to obey, observe and comply with any final order, direction, or requirement of the commission" . . . and according to Bouvier's Dictionary the word "direction" is defined: "Direction, in another sense, is nearly synonymous with instruction."

At any rate, if the intention of the Legislature had been to make a misdemeanor of the violation of the rules and regulations of the commission, it would have expressly provided it as it has done in regard to violations of the rules and regulations governing sanitation.

For the foregoing reasons our decision of December 11, 1925, will not be modified.

Mr. Justice Wolf took no part in the decision of this case.